1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA – FRESNO DIVISION

10

11

| | |
|---|---|
| ROBERTO MEDRANO and ALBERTO LANDA, | CASE NO. 1:10-cv-01555-LJO-SKO |
| Plaintiffs, | **FINDINGS AND RECOMMENDATIONS THAT THE CLAIM AGAINST DEFENDANT HAMLIN BE DISMISSED AND THAT PLAINTIFFS' MOTION FOR REMAND BE DENIED** |
| v. | |
| GENCO SUPPLY CHAIN SOLUTIONS aka GENCO DISTRIBUTION SYSTEMS and GENCO, INC.; RICHARD HAMLIN; and DOES 1 through 100, inclusive, | (Docket No. 8) |
| Defendants. | **OBJECTIONS DUE: 20 days** |

12
13
14
15
16
17
18
19

20

## I. INTRODUCTION

21

**A.      Procedural Background**

22

On July 9, 2010, Plaintiffs Robert Medrano ("Medrano") and Albert Landa ("Landa")

23

(collectively "Plaintiffs") filed a complaint in Fresno Superior Court against Genco I, Inc. ("Genco")

24

(erroneously sued as "Genco Supply Chain Solutions"), and Richard Hamlin ("Hamlin"), the Facility

25

Manager[1] at Genco (collectively "Defendants"), alleging various violations of the California Fair

26
27
28

_____

[1] Richard Hamlin's declaration submitted in conjunction with Genco's removal petition identifies Mr. Hamlin as the Facility Manager with Genco I, Inc.  (Doc. 1-8, ¶ 1.)

Employment and Housing Act ("FEHA"), codified at California Government Code § 12000, *et. seq.*[2]

Although service of process is disputed in this case, a proof of service as to Richard Hamlin reflects that he was served on July 27, 2010, by substitute service pursuant to California law. (Doc. 18, 4-6.) Genco asserts in its removal papers that it was served on July 28, 2010 (Doc. 1, ¶ 3 ("Genco I, Inc. was served on July 28, 2010"), but states in its opposition papers that it has never been served with process (Doc. 15, ¶ 18:3 ("Genco has not been served with process")).[3]

On August 26, 2010, Genco filed an Answer to the complaint in the Fresno County Superior Court. On August 27, 2010, Genco filed a Notice of Removal. (Doc. 1.) Hamlin did not join in the removal, but instead filed a declaration stating that he had not yet been served in the matter. (Doc. 1-8, ¶ 2.) Genco asserted in its removal that Hamlin was a fraudulent defendant and that his citizenship must be disregarded for purposes of assessing removal jurisdiction. (Doc. 1, ¶ 11.)

On September 24, 2010, Plaintiffs filed a Motion to Remand the case to state court. (Doc. 8.) A hearing was held on December 15, 2010, regarding Plaintiffs' motion, which is currently pending before the Court.

**B.    Factual Background**

Plaintiffs' complaint states six causes of action. The only cause of action against Defendant Hamlin is one for hostile work environment sexual harassment under FEHA asserted by only Plaintiff Medrano.[4] Medrano alleges that Hamlin subjected him to "third party visual and physical

---

[2] A First Amended Complaint was filed on July 23, 2010, changing none of the substantive allegations of the complaint, but instead correcting the spelling of Plaintiffs' names. These name changes are reflected in the caption above. (*See* Doc. 1-1, 67-69.)

[3] There is a dispute between the parties regarding whether Genco was properly served as explained more fully, *infra*. Genco maintains that it has never been formally served with process. Plaintiffs assert that Genco was served with *notice* of the complaint on July 27, 2010, by the substitute service of individual defendant Richard Hamlin at Genco's Fresno, California, facility. At oral argument, Plaintiffs' counsel asserted that Genco was served with formal process on August 28, 2010, although Genco's counsel disputes that it has ever received such process.

[4] Likewise, Landa states a claim against Genco for retaliation for asserting whistleblower rights that Medrano does not join. Together, Medrano and Landa state claims against Genco for (1) discrimination in violation of FEHA, (2) failure to take reasonable measures to prevent harassment under FEHA, (3) retaliation for asserting FEHA rights, and (4) wrongful termination.

sexual harassment." (Complaint ("Compl.") ¶¶ 13, 54.) This "harassment was daily,"[5] and Medrano

provides two examples of the complained of conduct as follows:

> 54. Defendant Hamlin created a hostile work environment by subjecting [Medrano] to third party visual and physical sexual harassment. For example, on one occasion in approximately December 2008, a female employee (in Medrano's presence) asked Defendant Hamlin if he was going to get some donuts, and said that she liked the ones with jelly. Defendant Hamlin responded, "Oh yes, I like to suck the jelly out of donuts," as he made a sexual expression with his tongue.

> 55. As a second example, Defendant Hamlin sexually harassed Plaintiff Medrano's wife and stepdaughter, who were Genco employees, by, for example, making sexual advances towards Medrano's wife, including, for example, rubbing his body against hers and staring at her breasts.

(Doc. 1-1, ¶¶ 54-55.) Medrano contends that he complained to Genco's managers between April

2008 and December 2008 about the sexual discrimination and the sexual harassment "against

himself, his wife, and his daughter." (Compl. ¶¶ 15, 56.) "Despite [Medrano's] complaints, the

sexual harassment and sex discrimination continued." (Compl. ¶¶ 16, 57.) When Genco and Hamlin

learned of Medrano's "complaints of sex discrimination and sexual harassment, they took action to

terminate [Medrano's] employment." (Compl. ¶¶ 16, 57.) Ultimately, Medrano's employment was

terminated on February 16, 2009. (Compl. ¶¶ 20, 61.)

## II. DISCUSSION

### A.    Legal Standard – Remand

"A defendant may remove an action to federal court based on federal question jurisdiction

or diversity jurisdiction." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (citing

28 U.S.C. § 1441). It is presumed, however, "that a cause lies outside [the] limited jurisdiction [of

the federal courts] and the burden of establishing the contrary rests upon the party asserting

jurisdiction." *Id.* (internal quotation marks omitted).

"Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the

first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). The defendant

always bears the burden of establishing that removal is proper, and the court "resolves all ambiguity

---

[5] There is no allegation contained in the complaint regarding the frequency of Hamlin's conduct. However, the November 2009 second amended administrative complaint attached to the complaint provides that the harassment was "daily." (Doc. 1-1, pp. 52, ¶ III(B).)

in favor of remand." *Hunter*, 582 F.3d at 1042.

The propriety of removal requires the consideration of whether the district court has original jurisdiction of the action,  i.e., whether the case could have originally been filed in federal court based on a federal question, diversity of citizenship, or another statutory grant of jurisdiction. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  If the case is within the original jurisdiction of the district court, removal is proper so long as the defendant complied with the procedural requirements set forth in 28 U.S.C. § 1446.  If the case is not within the original jurisdiction of the district court, removal is improper.  The absence of subject matter jurisdiction is not waivable by the parties. *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6 (1951).

Federal district courts have original jurisdiction over cases where there is complete diversity of citizenship, i.e., between citizens of different states. *See* 28 U.S.C. § 1332(a).  Further, a defendant may remove an action to federal court under Section 1332 provided no defendant is a citizen of the same state in which the action was brought. *See id.* § 1441(a), (b).  An exception to the requirement for complete diversity exists, however, when a non-diverse defendant has been fraudulently joined for the purpose of defeating diversity jurisdiction. *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).  In that case, the district court may disregard a non-diverse party named in the state court complaint and retain jurisdiction if joinder of the non-diverse party is a sham or fraudulent.

**B.    Contentions of the Parties**

Plaintiffs assert that Medrano's hostile work environment sexual harassment claim against Hamlin in his individual capacity is viable and he is, therefore, not a sham defendant.  As Hamlin is a California resident, his presence in the lawsuit destroys diversity and deprives the Court of jurisdiction. (Doc. 8-1, Plaintiffs' Motion for Remand, 6:24 - 10:12.)  Plaintiffs contend, therefore, that remand to Fresno County Superior Court is required.  Moreover, Plaintiffs aver that procedural defects in Genco's removal are fatal and dictate remand even if Hamlin's joinder is improper. (Doc. 8-1, 4:16 - 6:22.)

Genco maintains that Medrano's sexual harassment claim against Hamlin is not viable because Medrano (a man) is not a member of the protected class at whom Hamlin's harassing

conduct was allegedly directed (women).  Medrano, therefore, is a bystander who cannot satisfy the elements of a hostile work environment claim and lacks adequate standing.  Accordingly, Genco asserts that no viable cause of action is stated against Hamlin, he must be dismissed as a fraudulent or sham defendant, and his presence (importantly, his California citizenship) is to be disregarded for purposes of removal jurisdiction.  Further, Genco contends no procedural flaws in its removal exist and Plaintiffs' motion for remand must be denied.

**C.      Hamlin Is a Sham/Fraudulent Defendant**

        **1.      Legal Standard – Fraudulent Joinder**

      "Fraudulent joinder is a term of art" and does not require an ill motive.  *Id.*; *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983).  Joinder will be deemed fraudulent where the plaintiff fails to state a cause of action against the resident defendant, and the failure is obvious according to the settled rules of the state.  *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe*, 811 F.2d at 1339.  In determining whether a cause of action is stated, typically courts "'look only to a plaintiff's pleadings to determine removability.'" *Ritchey,* 139 F.3d at 1318 (quoting *Gould Mut. Life Ins. Co. of N.Y.*, 790 F.2d 769, 773 (9th Cir. 1986)).  Yet, where fraudulent joinder is an issue, the Ninth Circuit has directed that courts may go "somewhat further" by allowing a defendant to present facts showing that joinder is fraudulent.  *Id*. The review of the complaint, however, is constrained to the facts actually alleged therein; it does not extend to facts or causes of action that *could* be alleged via an amended complaint.  *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 n.12 (9th Cir. 1989) (affirming district court's refusal to consider allegations made in plaintiffs' unfiled, proposed amended complaint submitted as an attachment to a motion for reconsideration to determine whether valid claims had been stated for fraudulent joinder purposes (citing C. Wright & A. Miller & E. Cooper, *Federal Practice and Procedure: Jurisdiction* § 3739, at 580-81 (2d ed. 1985))); *Smith v. City of Picayune*, 795 F.2d 482, 485 (5th Cir. 1986) ("Generally, the right of removal is determined by the pleadings as they stand when the petition for removal is filed.").

In ruling on a motion for remand where fraudulent joinder is alleged, a court must evaluate the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of fact in favor of the plaintiff. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003); *see also Albi v. Street & Smith Publ'ns*, 140 F.2d 310, 312 (9th Cir. 1944) ("In borderline situations, where it is doubtful whether the complaint states a cause of action against the resident defendant, the doubt is ordinarily resolved in favor of the retention of the cause in the state court."). Federal courts in this circuit apply the fraudulent-joinder rule in cases only where it is indisputably clear that the plaintiff states no cause of action against the non-diverse defendant. *See Dominick's Finer Foods v. Nat'l Constr. Servs., Inc.*, No. CV10-00836-SVW (PWJx), 2010 WL 891321, at *2 (C.D. Cal. Mar. 9, 2010) (citing *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067-68 (9th Cir. 2001); *Kruso*, 872 F.2d at 1427; *McCabe*, 811 F.2d at 1339; *Maffei v. Allstate Cal. Ins. Co.*, 412 F. Supp. 2d 1049, 1053 (E.D. Cal. 2006); *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1136-37 (S.D. Cal. 1998); *Gasnik v. State Farm Ins. Co.*, 825 F. Supp. 245, 249 (E.D. Cal. 1992); *Zogbi v. Federated Dep't Store*, 767 F. Supp. 1037, 1041-42 (C.D. Cal. 1991)).

## 2. Claim Against Hamlin for Third-Party Sexual Harassment

Plaintiff Medrano alleges a cause of action against both Genco and Richard Hamlin for sexual harassment in violation of FEHA. FEHA makes it an unlawful employment practice for an employer, "because of the . . . sex. . . of any person, . . . to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a). Further, it is an unlawful employment practice for an employer, "because of . . . sex, . . . to harass an employee." *Id.* § 12940(j)(1).

Additionally, an individual employee of an entity subject to FEHA can be held personally liable for harassing behavior that is outside or extraneous to his job duties.[6] *Id.* § 12940(j)(3) ("An

---

[6] The California Supreme Court has differentiated discriminatory conduct from harassing conduct under FEHA for purposes of a supervisor's personal liability. Discriminatory conduct arises out of actions that are inherently necessary to perform a supervisor's job. Harassment arises out of conduct that is outside the scope of necessary job performance and "presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Jones v. Lodge at Torrey Pines P'ship* (*"Jones"*), 42 Cal. 4th 1158, 1164 (2008) (quoting *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 63 (1996)). This distinction is the basis for differing liability structures. While a

employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by the employee, regardless of whether the employer or covered entity knows or should have known of the conduct and fails to take immediate and appropriate corrective action.").

Sexual harassment is a form of sexual discrimination. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). In turn, hostile work environment claims are a particular subset of sexual harassment claims. *See Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991). California recognizes two theories upon which sexual harassment may be alleged. The first of these is quid pro quo harassment, which occurs where a term of employment is conditioned upon submission to unwelcome sexual advances. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 607 (1989). The second theory is one based upon a hostile work environment where the harassment is sufficiently pervasive such that the conditions of employment are altered and an abusive work environment is created. *Id.* Additionally, there are hybrid cases that involve a blending of the two theories. *Mogilefsky v. Super. Ct.,* 20 Cal. App. 4th 1409, 1415 (1993). For example, "[a] hostile work environment may result from inappropriate sexual conduct in the workplace." *Id.*

A claim for hostile work environment sexual harassment requires a claimant to assert that (1) he was a member of a protected class; (2) he was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) the harassment unreasonably interfered with his work performance by creating an intimidating, hostile, or offensive work environment. *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 279 (2006); *Fisher*, 214 Cal. App. 3d at 608.[7] Typically, plaintiffs assert hostile work environment claims against their entity employer, but under FEHA claimants "conceivably can name individuals as defendants." *Rieger v. Arnold*, 104 Cal. App. 4th

---

supervisor or other employee may be personally liable for harassment (conduct outside the scope of his job duties) under Section 12940(j), a supervisor is generally not personally liable for discriminatory conduct that arises within the scope of his job duties under Section 12940(a). *Reno v. Baird*, 18 Cal. 4th 640, 644 (1998). Nonetheless, in some hostile work environment claims, the hostile message that constitutes harassment may be "conveyed through official employment actions," and evidence that would otherwise be associated with a discrimination claim can form the basis of a harassment claim. *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 708 (2009) (citing *Miller v. Dep't of Corr.*, 36 Cal. 4th 446 (2005), and holding that *Miller* is "wholly consistent" with *Reno*, 18 Cal. 4th at 645-47).

[7] The elements of a hostile work environment claim under FEHA and Title VII of the Civil Rights Act of 1964 are identical. *Lyle*, 38 Cal. 4th at 279.

451, 464 (2002).

  **a.**  **Medrano Cannot State a Claim for "Third-Party Harassment" Against Hamlin**

  The first element of a hostile work environment claim requires that the plaintiff be a member of a protected class rather than a bystander who observes or knows about the harassment of others, but is neither personally targeted nor a member of the protected class that is a target of the harassment. *See Lyle*, 38 Cal. 4th at 279. A man, therefore, alleging a hostile work environment due to sexually harassing conduct directed at women in his workplace presents a question of standing for failure to meet this element of the claim.

  In the context of Title VII cases, the Ninth Circuit and other circuit courts of appeals have repudiated bystanders' claims for hostile work environment on the basis of standing where the bystander was not a member of the protected class that was the target of the hostile conduct. For example, in *Patee v. Pacific Northwest Bell Telephone Co.*, 803 F.2d 476, 478 (9th Cir. 1986), the court held that a hostile work environment claim brought by men related to conduct directed at women in their workplace was not viable for lack of standing because the men were not part of the protected class at whom the complained of conduct was directed.

  In *Childress v. City of Richmond*, 134 F.3d 1205, 1207 (4th Cir. 1998) (en banc) (per curiam), the Fourth Circuit reviewed a district court's dismissal of a hostile work environment claim under Title VII brought by white male police officers who alleged gender and race-based harassment of black and female members of the police force. The district court had dismissed the claim on the ground that the white male officers did not have standing under Title VII to bring an action for discrimination directed at others. In an evenly split opinion, the circuit affirmed the district court's dismissal on that basis. *Id.*

  In *Bermudez v. TRC Holdings, Inc.*, 138 F.3d 1176, 1179-81 (7th Cir. 1998), a white former employee (Schlichting) of an umbrella corporation for affiliated employment agencies asserted a hostile work environment claim under Title VII based on her co-workers' alleged racial bias against clients who came to the company seeking job placements. Schlichting also asserted that a black co-worker was shunned by white employees. *Id.* at 1180. The Seventh Circuit rejected Schlichting's

claim reasoning that none of the words or deeds alleged was directed against Schlichting.  *Id.*  The court pointed out that, even if the company was violating the rights of persons seeking a placement for employment, Schlichting was not entitled to enforce their rights.  *Id.*  The court stated the following:

> Her claim is not that white women were harassed on account of *their* race or sex, but that persons of any race or sex who were opposed to discrimination felt uncomfortable.  We have never recognized this as a valid theory of discrimination under Title VII, and it is hard to see how it could be reconciled with the proposition that laws must be enforced by the victims (or by public prosecutors) rather than by third parties discomfited by the violations . . . . The directly injured persons, rather than bystanders appalled to learn that discrimination is ongoing, are the proper plaintiffs in situations of this kind.

*Id.* at 1180-81.

Moreover, in the context of FEHA, the Ninth Circuit, in an unpublished memorandum decision, affirmed a district court's dismissal of a hostile work environment claim for lack of standing under similar conditions presented here.  *See Treadwell v. IPC Int'l Corp.*, 302 F. App'x 595, 596 (9th Cir. 2008).  In *Treadwell*, the plaintiff, a black male, asserted that his supervisor, Wilson, harassed women at the workplace. *Treadwell v. IPC Int'l Corp.*, No. 2:05-cv-06086, Docket No. 24, at *4 (C.D. Cal. Jan. 12, 2006).  Despite the plaintiff's complaints of Wilson's conduct, he was forced to continue to work with Wilson, and Wilson continued to harass women.  *Id.*  The court dismissed the hostile work environment claim against Wilson because Wilson's conduct was not directed at the plaintiff and the plaintiff (a man) did not have membership in the class against whom Wilson's alleged conduct was directed (women).  *Id.*  While the Ninth Circuit's decision affirming the district court is not precedential because it is unpublished,[8] it is a clear indication that the Ninth Circuit has extended the rationale of *Patee* in the context of FEHA.

Plaintiffs have made no attempt to distinguish this caselaw and failed to address Genco's argument that *Treadwell* clearly indicates that Medrano's claim is not viable.  Plaintiffs also cite no persuasive California or federal court authority that Medrano has standing to assert a claim based on third-party sexual harassment not directed at him.  Plaintiffs quote *Beyda v. City of Los Angeles*,

---

[8] While unpublished decisions are not precedent, unpublished dispositions and orders of the Ninth Circuit issued on or after January 1, 2007, may be cited to the courts of the circuit.  9th Cir. R. 36-3(b).

65 Cal. App. 4th 511, 519 (1998), for the proposition that California law recognizes that harassing conduct not directed at an employee or even witnessed by that employee may be actionable if "a reasonable person may be affected by knowledge that other workers are being sexually harassed in the workplace."  However, *Beyda* is not persuasive because it involved a female plaintiff who sought to introduce evidence of harassment of other women to show that she perceived her environment to be hostile to women.  On appeal, the appellate court pointed out that a woman's perception that her work environment is hostile to women is reinforced if she witnesses the harassment of other female co-workers; therefore, evidence related to the harassment of other women could be relevant to her claim.  *Id.* (quoting *Lehmann v. Toys 'R' Us, Inc.*, 132 N.J. 587, 626 A.2d 445 (1993) (quotation marks omitted)).  Given *Beyda*'s context, the isolated quote Plaintiffs reproduced has no bearing on whether Medrano can assert a claim against Hamlin for harassment directed at neither Medrano nor a protected class of which he is a member.

Plaintiffs cite *Miller*, 36 Cal. 4th at 466, for the proposition that any "employee may establish an actionable claim of sexual harassment under the FEHA by demonstrating that widespread sexual favoritism was severe or pervasive enough to alter his working condition and create a hostile working environment."  (Doc. 20, 2:25-28.)  *Miller* is inapposite.

In *Miller*, there was evidence that a prison warden engaged in sexual affairs with three subordinate employees who, because of their relationship with the warden, were granted employment benefits not extended to others and were given opportunity for advancement based upon sexual favors rather than merit.  *Id.* at 466-67.  Moreover, these subordinate employees subjected other co-workers to harassment that the warden refused to stop because of his relationship with those subordinate employees.  *Id.*  The California Supreme Court observed that the warden's sexual favoritism promoted a message that female employees were "sexual playthings" of management and/or that the way for women to get ahead in that workplace was by engaging in sexual conduct creating an atmosphere that was demeaning to women.  *Id.* at 467-68.  Under this set of facts, it is at least possible that both genders could assert a sexual harassment claim for creating a hostile work environment against their employer.  However, there is nothing in *Miller* to suggest that a supervisor is personally liable to every employee, who is aware of, but not subject

to, harassing conduct by that supervisor regardless of membership in a protected class. Additionally, *Miller* did not involve a harassment claim against the supervisor whose conduct was at issue – the claim was against the employer. Further, Medrano's harassment claim against <u>Hamlin</u> is not predicated on acts of sexual favoritism toward women resulting in a hostile and discriminating workplace for men, but on "third-party" comments, gestures, staring, and touching directed at women.

In their reply brief, Plaintiffs contend that Medrano's allegations against Hamlin should be inferred as direct harassment toward Medrano because Hamlin's conduct targeted Medrano's wife. (Doc. 20, 3:10-15.)  However, there are no allegations in the complaint that Hamlin's harassment of Medrano's wife was performed in Medrano's presence[9] and/or for the specific purpose of harassing Medrano  – which would have to be alleged for Hamlin's conduct to conceivably have been *directed* at Medrano.[10]

Finally, at the hearing on this matter, Plaintiffs presented, for the first time, citation to *Steiner v. Showboat Operating Co.*, 25 F.3d 1459 (9th Cir. 1994),[11] maintaining that it supported Medrano's standing to assert a "third-party" sexual harassment claim against Hamlin.[12]  In *Steiner*, a casino employee filed suit against her employer for harassment by her supervisor.  *Id.* at 1462.  In its defense, the casino employer asserted that the supervisor equally abused men and women alike; thus, the harassment of the plaintiff was not directed against her on the basis of her sex.  *Id.* at 1463.  The

---

[9] Plaintiffs argued vigorously in their papers and at the hearing that Medrano personally witnessed Hamlin's conduct towards his wife, but that allegation is not contained in the complaint or the administrative complaint.  Further, because another example of Hamlin's conduct was expressly stated as being performed in Medrano's presence and the example of Hamlin's conduct against Medrano's wife was not stated as performed in his presence, it is difficult for the Court to infer Medrano's presence where it was not alleged.  (*Compare* Compl. ¶ 54 *with* ¶ 55.)  In any event, even if the conduct was performed in Medrano's presence, there is no allegation it was directed at Medrano because there is no factual allegation that Hamlin *knew* that it was Medrano's wife.

[10] The complaint also fails to contain an explicit allegation that Hamlin knew Medrano was married to a Genco employee before the alleged harassment occurred.

[11] For the first time at the hearing Plaintiffs also argued the applicability of *Barker v. Riverside County Office of Education*, 584 F.3d 821 (9th Cir. 2009), addressed *infra*.

[12] Plaintiffs' counsel was admonished that citation to relevant authority for the first time at a hearing was inappropriate because Genco was deprived of any fair opportunity to respond to Plaintiffs' arguments with regard to these cases.  Nonetheless, the Court has reviewed both cases cited by Plaintiffs' counsel at the hearing.

district court accepted this defense and granted summary judgment for the casino employer. *Id.* On appeal, the Ninth Circuit reversed the district court, pointing out that the supervisor's treatment and remarks to women at his job were of a sexual or gender-specific nature. *Id.* at 1464. The court reasoned that, even if the supervisor had "used sexual epithets equal in intensity and in an equally degrading manner against male employees, he cannot thereby 'cure' his conduct towards women." *Id.* The court also clarified that, even though words from a man to a man are differently received than words from a man to a woman, it would not "rule out the possibility that *both* men and women working at [the casino] have viable claims against [the supervisor] for sexual harassment." *Id.* This dictum does not stand for the proposition that all male and female employees have a claim against a supervisor regardless of whether any harassing conduct was directed at them. Rather, the court was explaining that it was possible that the comments of the supervisor directed at the male employees could potentially constitute sexual harassment against the men if those men found it offensive and hostile. Here, Hamlin's conduct was not directed at Medrano; therefore, the dictum contained in *Steiner* is not applicable.

### b.   Medrano Cannot Satisfy the Protected Class Requirement Based on Association or Advocacy

Medrano, who is male, bases his claim of a sexually hostile work environment against Hamlin on conduct that targeted women at his work and, more specifically, conduct that targeted his wife. A plaintiff like Medrano, who is not in the protected class that was subjected to the alleged harassment, may satisfy the "protected class" requirement based on his "association with or advocacy on behalf of protected employees." *Thompson v. City of Monrovia*, 186 Cal. App. 4th 860, 877 (2010) (quoting *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009)). To properly allege this "associational standing," a plaintiff must plead facts indicating that he was *personally* subjected to unwelcome sexual conduct or comments *as a result* of his association with or advocacy for protected employees. *Id.*

Plaintiffs argued in their papers and at the hearing that, because some of Hamlin's conduct

was directed at Medrano's wife, this created a hostile working environment for Medrano.[13] Plaintiffs contend that it is the relationship between Medrano and his wife that made Hamlin's alleged sexual conduct toward her especially repugnant and abusive to Medrano. (Doc. 8-1, 8:23-26 (Hamlin's sexual advances toward Medrano's wife "constituted a level of severity that would unreasonably interfere with one's work performance, since she was not just a co-worker, but she was also, more importantly, his wife.").) However, it is not the quality or importance of the association that creates standing for Medrano to assert a sexual harassment claim against Hamlin. Rather, Medrano must *himself* have been the target of harassment *on account of* his association with or advocacy for his wife or other co-worker in the protected class who were the subject of Hamlin's alleged conduct. *See id.* While knowing that one's spouse was subjected to unwanted sexual advances or conduct would be very distressing, to be a viable FEHA claim, the allegations must indicate that harassing conduct was directed at Medrano and was due to an association with, or advocacy for, any of his female co-workers. *Id.* Those allegations do not exist in the complaint.

Further, although the complaint alleges that Hamlin made a sexual gesture "in [Medrano's] presence," the complaint does not state that the gesture was directed at him. (Doc. 1, ¶ 54.) The complaint's explicit reference to Medrano's harassment claim as that of a "third party" belies the theory that Medrano's harassment claim is predicated on conduct directed at him personally. (Doc. 1, ¶ 54 ("Hamlin created a hostile work environment by subjecting Medrano to third party visual and physical sexual harassment.").)

Moreover, even if the Court could infer that the gesture was directed at Medrano, there are no facts or allegations that it was directed at him on the basis of his association with his wife or

---

[13] For the first time at the hearing, Plaintiffs also cited Cal. Gov't Code § 12926(m), asserting that this provision indicates that anyone associated (such as Medrano) with a person who suffers harassment (Medrano's wife) may have a harassment claim. Section 12926(m) provides the following:

"Race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, age, or sexual orientation" includes a perception that the person has any of those characteristics or that the person is associated with a person who has, or is perceived to have, any of those characteristics.

However, *Thompson* clearly explained how a claim based on association is pled. It is not merely the existence of an association with someone who is harassed that gives rise to a claim; a claimant must have suffered harassment *as a result of* that association to satisfy the element of a hostile environment claim requiring the claimant to belong to a protected class. *Thompson*, 186 Cal. App. 4th at 877.

advocacy for her or any other women at Genco. *Thompson*, 186 Cal. App. 4th at 878  ("only harassment that specifically targeted those who associated with and advocated for African-Americans will result in an actionable hostile work environment claim for such individuals" (quoting *Barrett*, 556 F.3d at 515)).  More importantly, a lewd gesture, although coarse and rude, is not a type of visual harassment recognized under the California regulations.  Cal. Code Regs., tit. 2, § 7287.6(b)(1)(C) (visual harassment includes derogatory posters, cartoons, or drawings on the basis of sex).   Nor has the caselaw extended visual harassment to include a single lewd gesture as an example of visual harassment. *See Lyle*, 38 Cal. 4th at 280-81.[14]  The Court finds that the complaint states no viable claim for third-party sexual harassment against Hamlin based on a theory that Medrano satisfies the protected class element through association or advocacy.

### 3.      Claim for "Retaliatory Sexual Harassment"

In a footnote in their reply brief, Plaintiffs assert for the first time that "it is possible that [Hamlin] could be personally liable for retaliatory sexual harassment."  (Doc. 20, 3:15, n.2.) Plaintiffs cite *Jones*, 42 Cal. 4th at 1168 n.4, to support this statement.   To the extent that Plaintiffs are asserting that Medrano may satisfy the element of the claim requiring his membership in a protected class because sexual harassment was directed at him as retaliation for his association with his wife or his advocacy in complaining to management about the sexual harassment of female co-workers, that theory is not pled.

As explained above, no facts indicate that Hamlin directed harassment at Medrano because Medrano complained to management about Hamlin's treatment of female co-workers, including his wife.  Specifically, the complaint states that, "[w]hen Defendant's [Genco] and [Hamlin] learned of Plaintiff Medrano's complaints of sex discrimination and sexual harassment, they took action to terminate [Medrano's] employment."  (Compl. ¶¶ 16, 57.)  The retaliation assertedly suffered was the termination of Medrano's employment.  There are no allegations that Hamlin retaliated against Medrano by acts of sexual harassment directed at Medrano after Hamlin became aware of Medrano's

---

[14] Plaintiffs conceded in their reply brief that a lewd gesture was not one of the enumerated examples of visual harassment under California regulations.  (Doc. 20, 3:9, n. 1.)  Additionally, Plaintiffs provided no caselaw to show that lewd gestures are actionable as visual harassment.

complaints. Therefore, there is no "retaliatory sexual harassment" pled. The Court will not entertain potential or "possible" claims or theories not factually supported in the original complaint. *Kruso*, 872 F.2d at 1426.

To the extent that Plaintiffs' footnote avers that the allegation regarding Hamlin's involvement in Genco's termination of Medrano's employment constitutes a retaliation claim under Section 12940(h) of FEHA, the Court does not agree. In *Reno*, 18 Cal. 4th at 644, the California Supreme Court held that, although an employer may be held liable for discrimination under FEHA, non-employer individuals are not personally liable for that discrimination under Section 12940(a). The *Reno* decision did not address whether a supervisor could be personally liable for retaliatory conduct in violation of Section 12940(h),[15] a provision of FEHA that arguably imposes broader liability than Section 12940(a).

In *Jones*, the California Supreme Court considered the question left unanswered in *Reno* of whether a supervisor could be held personally liable for retaliation under Section 12940(h). The court held that, as with claims for discrimination under Section 12940(a), a supervisor is not personally liable for retaliation claims made on the basis of discriminatory conduct during the course of that supervisor's job duties. *Jones*, 42 Cal. 4th at 1173 ("[W]e conclude that the employer is liable for retaliation under section 12940, subdivision (h), but nonemployer individuals are not personally liable for their role in that retaliation."). In holding that supervisors were not personally liable, the court described at length the distinction between discriminatory conduct supervisors engage in during the course of job-related duties and harassing behavior they engage in for their own personal reasons. *Id.* at 1162-68.

The *Jones* court noted that supervisors may be liable for acts of harassment (conduct outside the scope of employment-related duties) under Section 12940(j).[16] The court reasoned, however,

---

[15] Section 12940(h) provides that it shall be an unlawful employment practice "[f]or any . . . person to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden [by FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]."

[16] Section 12940(j)(3) provides that "[a]n employee of an entity subject to this subdivision is personally liable for any harassment prohibited by this section that is perpetrated by that employee."

that, because supervisors were not personally liable for *discriminatory* conduct under Section 12940(a), they could not be personally liable for retaliation arising out of this type of discrimination under Section 12940(h).  The court specifically refused to address whether a retaliation claim under Section 12940(h) would be viable against a supervisor in his individual capacity relating to *harassment* under Section 12940(j) rather than discriminatory job-related conduct under Section 12940(a).  The Court noted the following:

> Justice Moreno's dissent argues, in part, that a supervisor who is liable for harassment should also be liable for retaliating against someone who opposes or reports that harassment.  This case does not present that situation.  Although plaintiff included a cause of action for harassment in his complaint, the trial court ruled, in a ruling long-since final and binding in this case, that there was no actionable harassment.  Therefore, Weiss is *not* liable for harassment.  Because the issue is not presented, we express no opinion on whether an individual who is personally liable for harassment might also be personally liable for retaliating against someone who opposes or reports that same harassment.

*Id*. at 1168 n.4.

As in *Jones*, without a viable claim for harassment under Section 12940(j), whether a retaliation claim under 12940(h) could be actionable against Hamlin in his individual capacity is not presented.  Based on the facts alleged, Hamlin cannot be liable to Medrano for Hamlin's harassing acts against other female co-workers and Medrano's wife under Section 12940(j) – there must be some harassing conduct directed at Medrano *because* of his association with his wife, or for advocacy for those in a targeted and protected class.  Whether Medrano could state a claim for retaliation under Section 12940(h) based on the latter conduct is only a hypothetical theory not presented by the facts actually pled.  Whether a Section 12940(h) claim for retaliation could be asserted against a supervisor in his individual capacity without a viable Section 12940(j) claim for harassment is simply not contemplated by any caselaw presented by Plaintiffs, nor has the California Supreme Court recognized such a cause of action.  *See Jones*, 42 Cal. 4th at 1168, n.4.

For the first time at the hearing in an argument not articulated in Plaintiffs' pleadings, Plaintiffs' counsel appeared to assert that *Barker*, *supra*, note 10, indicates, by analogy or comparable illustration, that, if Hamlin directs any conduct prohibited by Section 12940(j) at *any* Genco employee and then retaliates against Medrano for reporting that harassment (although not directed at Medrano), he has at least a potentially viable claim under Section 12940(h) for retaliation

16

against Hamlin in his individual capacity.  In *Barker*, a special education teacher filed suit against her employer, the Riverside County Office of Education ("RCOE"), for constructive termination arising out of an intolerable work environment.  584 F.3d at 823.  The gravamen of her claim was that she was retaliated against for reporting her concerns to her supervisors that the special education services provided by RCOE to its disabled students were non-compliant with federal and state law. *Id.*  The district court dismissed her claim for lack of standing, but the Ninth Circuit reversed, finding that she had standing to assert her claim under the anti-retaliation provisions of Section 504 of the Rehabilitation Act of 1973 ("RA") and Title II of the Americans with Disabilities Act ("ADA").  *Id.* at 825.

The Court understands Plaintiffs' argument to be that, if a special education teacher has a viable claim for retaliation under the ADA for reporting violations of the ADA as to her students (and not herself), then Medrano has a claim for retaliation under Section 12940(h) for reporting Hamlin's harassing behavior in violation of Section 12940(j) directed at others in his workplace. The *Barker* case does not aid Plaintiffs' argument.[17]

First, *Barker* has little applicability as it was a suit for retaliation under the ADA and the RA against an *employer*.  Second, the complaint does not include a claim for retaliation against Hamlin. While there is an explicit claim for retaliation against Genco under Section 12940(h) (*see* Compl. ¶¶ 99-111), no retaliation claim is stated against Hamlin.  Third, Plaintiffs' citation to *Barker* at the hearing does not make clear that anyone, after reviewing the complaint, could be on notice or otherwise be informed that the claim against Hamlin in his individual capacity for harassment creating a hostile work environment should in fact be recast and understood as a retaliation claim under a completely different provision of FEHA – a claim that has never been recognized as viable in the FEHA context.  Plaintiffs are essentially asking the Court to consider what claim *might* be pled against Hamlin rather than what claim was actually stated against him in the complaint.  This new theory of liability, presented for the first time at the hearing and not adequately set forth in the

---

[17] The Court finds no support in *Barker* for the proposition that Medrano has a viable sexual harassment claim under Section 12940(j) against Hamlin.  *Barker*'s only potential relevance is as an illustration of a legal theory that may, if pled, give rise to a viable retaliation claim under Section 12940(h).

complaint, asks the Court to perform an end-run around the Ninth Circuit's decision in *Kruso* that stated, in considering allegations of fraudulent joinder, it would "not consider the allegations contained in the unfiled 'Proposed First Amended Complaint.'"  *Kruso*, 872 F.2d at 1426 n.12. Moreover, while Plaintiffs do not present a proposed amended complaint for the Court to consider as was the case in *Kruso*, they are essentially arguing how the complaint *could be amended* to state a claim against Hamlin.  For purposes of removal jurisdiction, the Court must deal with what has actually been pled and what can be construed as having been pled, not mere possibilities in the universe of theories and claims not stated in the complaint.  *See id.*  The Court makes no finding whether this theory of liability could constitute a viable claim under Section 12940(h) against Hamlin.  Rather, the Court finds that no such claim has been stated.  Plaintiffs remain free to seek leave to amend their complaint to include such a claim against Hamlin, and at that time they may request that the Court reconsider its subject matter jurisdiction in light of such a proposed amendment.  As this claim and theory of liability was not set forth in the complaint, this would also provide Genco with the opportunity to address such a claim and Plaintiffs' supporting arguments and legal citations that Genco was not provided prior to the hearing.

For the reasons stated above, the Court finds that Medrano has stated no viable claim for sexual harassment or retaliation under the FEHA against Hamlin in his individual capacity.

### 4.    Claim for Intentional Infliction of Emotional Distress

For the first time, in the introduction section of their reply brief, Plaintiffs summarily assert that Medrano's allegations *could* support a claim of intentional infliction of emotional distress ("IIED") against Hamlin based on Hamlin's sexual touching of Medrano's wife in his presence. (Doc. 20, 1:25-27 ("[Medrano's] allegations could support a claim of intentional infliction of emotional distress against Defendant [Hamlin] based upon Defendant [Hamlin's] sexual touching of [Medrano's] wife in his presence.").)  Notwithstanding that this assertion is made for the first time in the reply brief, the Court will address it.

To allege a claim for IIED, a plaintiff must allege (1) extreme and outrageous conduct by the defendant with the intention of causing emotional distress, (2) suffering severe or extreme emotional distress, and (3) actual and proximate causation of the emotional distress by the defendant's

outrageous conduct.   *Christensen v. Super. Ct.*, 54 Cal. 3d 868, 903 (1991).   The California Supreme Court has held that "[i]t is not enough that the conduct be intentional and outrageous.   *Id.* It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."   *Id.*   In circumstances where a plaintiff seeks to recover for emotional distress suffered as the result of conduct directed primarily at another, recovery – to the extent it has been allowed at all – "has been limited to the most extreme cases of violent attack, where there is some especial likelihood of fright or shock."   *Id.* at 905 (internal quotation marks omitted).

Here, while Plaintiffs allege in their moving papers and in their Reply brief that Medrano personally witnessed Hamlin's conduct directed towards Medrano's wife, this allegation is not contained in the complaint.   (*See* Compl. ¶ 55.)   Plaintiffs asserted at the December 15, 2010, hearing that the complaint and the administrative complaint attached as an exhibit to the complaint imply that Medrano witnessed the conduct with regard to his wife.   Even assuming that Medrano witnessed Hamlin's conduct with regard to his wife, a claim for IIED based on recovery for distress caused as a result of injuries *to another* – which is the case here  – is limited to the most extreme cases of violent attack.   *Id.*; *Ess v. Eskaton Props., Inc.*, 97 Cal. App. 4th 120, 131 (2002).   The facts alleged do not show that this was a case of extreme violence such that Hamlin's conduct toward Medrano's wife would have an actionable IIED claim for conduct toward Medrano's wife.

Finally, there is no allegation that Hamlin was acting for the purpose of causing Medrano distress or that he was aware of Medrano's presence when he allegedly touched or stared at Medrano's wife.   *See Ochoa v. Super. Ct.*, 39 Cal. 3d 159, 166 n.5 (1985) (IIED requires outrageous conduct that is "especially calculated to cause, and does cause," mental distress).   Beyond that no claim for IIED is explicitly asserted in the complaint, the facts of the complaint cannot be construed to state a claim for IIED based on Hamlin's conduct toward Medrano's wife.

Plaintiffs point to the liberal pleading rules, especially those of California, asserting that, even if a claim is not adequately stated in the complaint, the complaint could be amended to adequately set forth *some* cognizable claim against Hamlin.   As stated previously, assessing the propriety of removal requires the Court to assess the pleadings that exist at the time of removal and the possible claims that have any viability given the facts *actually pled* – not hypothetical factual

scenarios not contained in the pleadings.  Courts do not look to post-removal filings to the extent they introduce new causes of action or legal theories.  *See Kruso*, 872 F.2d at 1426 n.12 ("This court will not consider the allegations contained in the unfiled 'Proposed First Amended Complaint'"); *see Williams v. Costco Wholesale Corp.*, 471 F.3d 975, 976 (9th Cir. 2006) ("We have long held that post-removal amendments to the pleadings cannot affect whether a case is removable, because the propriety of removal is determined solely on the basis of the pleadings filed in state court."); *see also Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999) ("Post-removal filings may not be considered, however, when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court.").  Only under the very limited circumstances explained in *Christensen* can a bystander assert an IIED claim for conduct direct at another.  *See Christensen*, 54 Cal. 3d at 903.  Those circumstances are simply not presented by the facts of the complaint, and an IIED claim as to Hamlin is not viable.

### 5.  Conclusion and Recommendations

For the reasons stated above, the Court finds that Medrano states no viable claim for third-party sexual harassment under FEHA against Hamlin in his individual capacity.  The Court also finds that the facts of the complaint cannot be construed to state a viable IIED claim or a retaliation claim under FEHA against Hamlin.  Therefore, the Court recommends that the sexual harassment claim against Hamlin be dismissed.  As a result, the Court also recommends that Hamlin be considered a fraudulent or sham defendant and that his citizenship be disregarded for purposes of determining the Court's subject matter jurisdiction.  *Ritchey*, 139 F.3d at 1318 ("It is a commonplace that fraudulently joined defendants will not defeat removal on diversity grounds.").  As Genco is not a California resident and is diverse from both Plaintiffs Medrano and Landa, the Court should determine that it has removal jurisdiction under 28 U.S.C. § 1441.

### D.  Procedural Issues

#### 1.  The Rule of Unanimity

Plaintiffs assert that Genco's removal is procedurally flawed because Hamlin did not join in the removal, thereby violating the "rule of unanimity." (Doc. 8-1, 4-5.) Genco asserts that Hamlin was never properly served; therefore, his consent is irrelevant and unnecessary for purposes of

removal. (Doc. 15, 7-9.) Genco also contends that, even if Hamlin were properly served, his joining the removal is likewise irrelevant because he is a sham defendant. (Doc. 15, 9-10.)

"As a general rule, all defendants who may properly join in the removal petition must join." *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1314 (9th Cir. 1981) (citing *Chi., Rock Island & Pac. Ry. Co. v. Martin*, 178 U.S. 245 (1900)).  However, the rule of unanimity does not apply to "nominal, unknown or fraudulently joined parties." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988).  As the Court finds Hamlin to be a fraudulent/sham defendant, his consent to removal was not necessary and is irrelevant.  *See id.* There is no need for the Court to make any further findings with regard to Hamlin's failure to join in the removal.  If Hamlin were not a fraudulent/sham defendant, analyzing Genco's failure to join Hamlin would be merely an academic exercise – the entire suit would be subject to remand based on a lack of jurisdiction regardless of Hamlin's lack of consent.

## 2.    Genco's Removal Was Timely

Title 28, section 1446(b) of the United States Code provides, in part, that "[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  The thirty-day removal period begins only when a defendant is formally served with a copy of the complaint.  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.* (*"Murphy"*), 526 U.S. 344, 353-54 (1999).

In their motion, Plaintiffs assert, without citation, that "[w]hen there is more than one defendant, who receive notice of the removability of the case at different times, the 30-day filing requirement of 28 U.S.C.S. § 1446(b) begins when one defendant receives notice that the case has become removable." (Doc. 8-1, 6:3-6.)  Plaintiffs accomplished substitute service on Hamlin on July 27, 2010, by delivering a copy of the summons and complaint to a security guard at Genco's Fresno, California, location where Hamlin is employed.  (*See* Doc. 17, ¶ 6.)  This complaint was passed on to Chris O'Brien, Genco's Fresno Office Manager, who forwarded it via facsimile to Salvadore Reyes, a Regional Manager for Genco. (Doc. 16, ¶¶ 1-2.)  Plaintiffs do not assert that this was *proper* service with regard to Genco.  Rather, they assert this amounted to *notice* to Genco of

the lawsuit on July 27, 2010, and commenced the 30-day period for removal.  On this basis, they contend that Genco was untimely by filing its removal on August 27, 2010 – 31 days later.  (*See* Doc. 20, 6:27-28 - 7:1-2 (through declaration, Genco "admit[s] that [it] received a copy of the summons and complaint on July 27, 2010, which was 31 days prior to filing the removal on behalf of Genco"), ("28 U.S.[C]. § 1446 does not require service of process, but only requires awareness or receipt.").

The United States Supreme Court unequivocally dispensed with Plaintiffs' arguments in this regard more than 11 years ago.[18]   *See Murphy*, 526 U.S. at 347-48  (holding service of process, rather than mere "receipt" or notice of the complaint, begins the 30-day time for removal under Section 1446(b)).  Therefore, when Genco received *notice* of the lawsuit is irrelevant for purposes of calculating the timeliness of Genco's removal.

There is, however, a nuance in cases with multiple defendants, and a split exists in the circuits as to whether it is proper service of the *first* defendant that begins the 30-day removal period or whether the 30-day period instead begins when the *last* defendant is properly served.  *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 763 n.4 (9th Cir. 2002).  The Ninth Circuit has not weighed in "on the propriety of either rule," and this Court need not divine which rule it would adopt.  *Id.*  Here, it makes no difference which defendant's service triggered the 30-day time period; under every scenario, Genco's removal was timely.

First, the Ninth Circuit has held that,

> [i]f the fraudulence of a defendant's joinder is irrelevant for purposes of determining diversity, and there is no obligation to join such a defendant in a removal petition, there is no good reason why date of service on a fraudulently joined defendant should commence the thirty-day time period for removal under § 1446(b).

*Id.*  Therefore, because the Court finds that Hamlin is a sham defendant, service of Hamlin does not commence the 30-day removal period.  *See id.*

---

[18] Although Genco cited *Murphy* in its opposition to support its position that the 30-day removal period is not triggered until proper service of process has occurred, Plaintiffs failed to acknowledge this caselaw in their Reply brief and maintained in their papers and in argument to the Court that *notice* of the lawsuit, rather than proper service of process, triggers the 30-day period for removal under 28 U.S.C. § 1446(b).  The Court finds nothing ambiguous about the Supreme Court's holding in *Murphy*.  Plaintiffs' arguments in this regard are entirely without merit.  *See* Cal. Rules of Prof'l Conduct R. 5-200.  Counsel is cautioned that further assertions in this regard, without discussing *Murphy* and its applicability here, may warrant the imposition of sanctions.

Second, even if service on Hamlin did commence the 30-day removal period, Hamlin was served by substitute process[19] which is not effective until 10 days after the serving party has mailed a copy of the summons and complaint to the served party at the place where the complaint and summons were left.  Cal. Civ. Proc. Code § 415.20(b) ("Service of a summons in this [substitute] manner is deemed complete on the 10th day after the mailing."); *see also Billings v. Edwards*, 91 Cal. App. 3d 826, 830 (1979) ("Copies of the summons and complaint were not mailed until October 5, 1977.  Since, under the last sentence of section 415.20, service was not 'complete' until ten days after mailing, service was not effected until October 15, 1977. . . .").

Assuming *arguendo* that Hamlin was properly served with substitute process on July 27, 2010, the proof of service reflects that the complaint and summons were mailed to Hamlin that same day.[20]  Thus, this substitute service was not deemed effective until August 6, 2010 – 10 days *after* mailing.  If this service commenced the 30-day removal period, Genco's August 27, 2010, removal notice was filed well within 30 days from August 6, 2010.

Finally, service on Genco apparently either took place on August 28, 2010, as Plaintiffs represented at the December 15, 2010, hearing, or has never taken place at all as Genco's counsel asserted at the hearing.  No proof of service with regard to Genco appears in the record in this Court's docket or in the online docket at the Fresno County Superior Court as of the date of this

---

[19] Under the California Code of Civil Procedure a person may be served "by delivering a copy of the summons and of the complaint to such person or to a person authorized by him to receive service of process." Cal. Civ. Proc. Code § 416.90 (West 2010). Section 415.20 of the California Code of Civil Procedure provides an alternative means of service where personal service cannot be made after reasonable diligence. Section 415.20 provides as follows (emphasis added):

(b) If a copy of the summons and complaint cannot with reasonable diligence be personally delivered to the person to be served, as specified in Section 416.60, 416.70, 416.80, or 416.90, a summons may be served by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address other than a United States Postal Service post office box, in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address other than a United States Postal Service post office box, at least 18 years of age, who shall be informed of the contents thereof, and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were [sic] left. **Service of a summons in this manner is deemed complete on the 10th day after the mailing.**

[20] The parties dispute whether the substitute service on Hamlin was proper.  Genco asserts that Plaintiffs did not, with reasonable diligence, attempt to serve Hamlin with personal service such that they could elect to serve him by substitute process.  The Court need not make any finding with regard to the propriety of substitute service on Hamlin because, even if substitute service *were* proper, Genco's removal is still timely.

order.[21]  Moreover, Plaintiffs do not assert that Genco was served prior to the filing of the removal notice on August 27, 2010.  Therefore, service of process on Genco does not affect the timeliness of removal.

For these reasons, the Court concludes that Genco's removal was timely under any calculation of the 30-day period.

### 3.       Genco Did Not Waive Its Right to Seek Removal by Filing an Answer in State Court

Plaintiffs argue that Genco waived its right to remove by filing an answer in state court prior to filing its removal notice. (Doc. 8-1, 4:16-23.)  Plaintiffs cite two out-of-jurisdiction district court decisions to support the proposition that "[s]ome courts have ruled that filing an answer in the state court constitutes a waiver of a defendant's right to seek removal of the state action to federal court." (*Id.*)

A defendant may waive its right to remove to federal court where, after it is apparent that the case is removable, the defendant takes actions in state court that manifest a clear and unequivocal intent to have the matter adjudicated there and to abandon the right to a federal forum.  *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994).  Filing a responsive pleading does not invoke the state court's jurisdiction so as to constitute waiver of the right to remove.  *Id.* ("[D]efensive action to avoid a judgment being entered automatically against [the defendant] . . . does not manifest an intent to litigate in state court, and accordingly, does not waive the right to remove.");  *Foley v. Allied Interstate, Inc.*, 312 F. Supp. 2d 1279, 1284 (C.D. Cal. 2004); *Acosta v. Direct Merchants Bank*, 207 F. Supp. 2d 1129, 1131 (S.D. Cal. 2002) ("It is well-settled that merely filing a responsive pleading does not invoke the state court's jurisdiction so as to constitute a waiver of the right to remove.").  Genco did not waive its right to remove merely by filing an answer in state court.

### 4.       Conclusion

---

[21] *Medrano v. Genco supply Chain Solutions*, No. 10CECG02381, Fresno County Superior Court online docket at http://banweb.co.fresno.ca.us/cprodsnp/ck_public_qry_doct.cp_dktrpt_frames?backto=P&case_id=10CECG02381& begin_date=&end_date=

For the reasons stated above, Genco's removal of this action was procedurally proper.  This finding, however, is predicated, at least in part, on Hamlin's status as a fraudulent defendant.  If Hamlin were not a sham defendant, however, the procedural concerns would be nullified by the lack of subject matter jurisdiction that Hamlin's presence in the lawsuit would destroy.

**E.    Request for Attorneys' Fees and Costs**

Where a case is remanded following a failed attempt at removal, the district court may impose attorneys' fees and costs incurred by the party who successfully opposed removal.  Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  Thus, Congress has authorized the court to award attorneys' fees upon remand.  The statute does not require the court to make a finding of bad faith prior to awarding fees.

Plaintiff Medrano requests an award of fees and costs totaling $4,950, and Plaintiff Landa requests that he be awarded $6,825 in attorneys' fees and costs.  Plaintiffs request a total of $11,775 for attorneys' fees and costs related to contesting Genco's removal.   As the Court concludes that removal was proper, there is no basis to award fees.  Plaintiffs' request should be denied.

## IV.  RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS as follows:

1.    The Third-Party Harassment Claim against Hamlin be DISMISSED without prejudice;

2.    Plaintiffs' Motion for Remand be DENIED; and

3.    Plaintiffs' Request for Attorneys' Fees be DENIED.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty (20) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Responses to objections shall be filed, and served on all parties, within 14 days after service of the objections.

The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    January 10, 2011** _____/s/ Sheila K. Oberto_____
                                            UNITED STATES MAGISTRATE JUDGE